## Hurst, Jr. v. Winchester Bank, et al.

(Decided June 12, 1913.)

### Appeal from Wolfe Circuit Court.

Contracts—Construction of.—When the court comes to construe a writing, it will not be altogether controlled by the name that the parties have given it, but will look to the paper and determine for itself the ·nature and quality of the writing. If it is in fact a mortgage, although it may be called a deed, or is in truth a contract of sale and purchase, but designated a mortgage, the court, while giving due consideration to the acts of the parties in describing the paper, will not permit injustice or fraud to be practiced by following the title given to the paper by the parties, but will so construe it as to carry out what the facts show was their real intention in its execution.

J. J. C. BACH, GRANNIS BACH, J. M. TESTER and S. G. SAMPLE for appellant.

O'REAR & WILLIAMS and A. F. BYRD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In April, 1908, C. H. Loveland obtained from W. L. Hurst, Sr., an option on a large number of timber trees, and for some reason not shown, as the option contract is not a part of the record, the land on which the trees stood was divided into four boundaries, numbered 1, 2, 3 and 4. On June 2, 1909, a writing was made and entered into between C. H. Loveland of the first part and Day & McLin, parties of the second part. This writing recited that,

"In consideration of ten thousand dollars paid in cash by the second to the first party, and the further sum of five thousand dollars, to be hereafter paid and loaned by the second parties to the first party in monthly payments to be made as the first party manufactures and stacks the lumber on his yards, cut from the timber hereinafter described, in sums sufficient to cover the monthly

pay-roll and cost of operation, including cutting and hauling, until the sum of five thousand dollars has been thus paid in full, all of the said money including the said ten thousand dollars, to bear interest at the rate of six per cent per annum from the date loaned until paid, and all of said sums to be due and payable on or before the first day of September, 1912, with accured interest, pursuant to the terms and conditions hereinafter stated, the first party does hereby grant, bargain, sell and convey unto the second parties, their heirs and assigns, in fee simple, all of the right, title and interest of the first party in and to the hereinafter described timber." * * *

"To have and to hold all of the above described property unto the second parties, their heirs and asigns in fee simple, with covenant of general warranty; provided, however, that the first party shall have the right from time to time to make sales of any and all of the lumber and other products manufactured from said timber, or to contract in advance for same, and to secure thereon advancements of money from the purchaser, all to be subject to said mortgage thereon; and the second parties shall sign and deliver to the first party from time to time releases of such lumber as may be sold or contracted to be sold, from the effect and operation of said mortgage thereon, which shall be for the benefit of the purchaser, and any release signed by either of the second parties signing the firm name of Day & McLin shall be a sufficient release of such part of the property conveyed by this mortgage as therein specified, but to secure such release the first party shall furnish to second parties a full and complete statement of the lumber or other products to be sold or contracted for, and the terms of such sale or contract, and the amount of such advancements or advancement to be secured thereon which statement shall be subject to inspection and verification by second parties at first party's expense, as provided in the contract between the parties hereto of date June 1, 1909, relating to said timber, but the second parties shall within one week from the time they are furnished with such statement by first party, make whatever inspection or verification they may desire, and execute and deliver to first party said release, which release shall authorize the purchaser or party making advancements on said lumber to make all payments or advancements thereon by check or draft payable to the order of Day & McLin,

agents special account, at the Winchester Bank in Winchester, Kentucky, which checks or accounts shall be deposited to said account at said bank, which account shall be subject to checks and drafts, drawn by Day & McLin, agents, and countersigned by first party, which are drawn or made payable for the following purposes, namely:

"First: For the monthly pay roll and costs of manufacture and delivery on cars, including cutting and hauling, which shall include in said pay-roll the monthly salary to first party of $150 per month.

"Second: For the payment to W. L. Hurst on the balance due him for boundaries or lots of timber remaining unpaid for under said option and purchase.

"Third: For payments on said loan made by second parties to first party above referred to, and second parties' salary provided for in contract of even date herein. * * * But this mortgage is on the condition, however, that, should the first party or any one for him well and truly pay off and discharge the said debts and all interest thereon secured by this mortgage when due, then in that event this mortgage shall be and become null and void; else to be and remain in full force and effect."

In August, 1909, Loveland, for the purpose of procuring another loan of $6,788, evidenced by several notes, and to further secure the payment of the ten thousand dollars referred to in the mortgage of June 2, 1909, mortgaged to Day & McLin a large quantity of lumber and personal property under substantially the same terms and conditions set out in the mortgage of June second.

On July 23, 1909, Loveland and the appellant, W. L. Hurst, Jr., entered into a contract, by the terms of which Hurst agreed to build tram roads, haul trees and lumber, and do other things for Loveland in connection with the manufacture of the timber he had secured in the option contract with Hurst, Sr., for a stipulated consideration, amounting to some $4,500, all of which was paid by Loveland, except $1,406.

It appears that Day & McLin negotiated the note for ten thousand dollars, executed to them by Loveland, to the Winchester Bank, and in 1912, the bank brought suit on the note against Loveland, Day & McLin, and also set up the mortgage executed by Loveland to Day & McLin to secure its payment, and asked for a judgment and

the enforcement of the mortgage lien on the property therein described. W. L. Hurst, Jr., was also made a party defendant to this suit for the purpose of requiring him to assert any interest he might have in the mortgaged property. In this suit Judgment went by default against Loveland, Day & McLin, and an order was made directing the sale of a sufficiency of the mortgaged property to pay the judgment.

It further appears from the judgment that William L. Hurst, Jr., had brought suit against Loveland on his hauling contract, and in that suit had obtained an attachment which was levied on some of the property covered by the mortgage, and the judgment recited that the issues between Hurst and the Winchester Bank were reserved for future adjudication.

After this Hurst filed an answer, counterclaim and cross-petition, in which he asserted "that at the time said arrangements and contracts were entered into the defendant, Loveland, had no money or means with which to pay for said timber, or to have it cut or hauled to his mill, or to manufacture it, or transport it to market, and that the contracts above set out were entered into in order that defendants, Day & McLin might advance to him the necessary money for said purpose, they to receive therefor a large bonus, to-wit: Six thousand dollars in addition to the six per centum interest on the money actually advanced by them.

"He says that upon the execution of these contracts, the defendants, Day & McLin, became interested in having the timber named in said writings cut and hauled to the mill of defendant, Loveland, and there manufactured into lumber and other forest products; and to enable the said Loveland to do so, it was stipulated in both of said writings that the funds arising from the sale of said lumber or other forest products manufactured from said timber, or any advancement received thereon, was to be applied, first: to the payment of said Loveland's monthly pay roll and cost of manufacture and delivery on cars, including cutting and hauling. He says that said stipulation was made in said writing for the benefit of whomsoever the defendants might employ to cut and haul said timber and manufacture and transport it to market; and that the defendants, Day & McLin, by accepting said contract containing said stipulation, impliedly promised and agreed to pay the compensation to

whomsoever said Loveland might employ for said purpose.''

He further set out his hauling contract with Loveland, and averred that there was due him on account of said contract the sum before mentioned, and that he was entitled to be subrogated to the rights of Day & McLin, and by reason thereof he has a superior lien upon the lumber manufactured from said timber to secure the payment of his debt, interest and cost; and the plaintiff acquired whatever interest it has in or to said lumber, with notice of his lien.

He further averred ''that by reason of the said McLin and the plaintiff having agreed to furnish the said money with which to pay for the hauling of said timber, and having received from him a valuable consideration therefor, they became and are liable to him jointly with the defendant, Loveland, for the amount the defendant, Loveland, promised and agreed to pay him for hauling said timber, to-wit, $4,500, and that under the said contract they did furnish him the amount of $3,093.73, so paid by them and the said Loveland, under said agreements and contracts, and that same was the only money furnished him by them for that purpose.''

To this pleading a general demurrer was sustained, and the pleading dismissed. It is from this order of the court that Hurst prosecutes this appeal.

We have set out at more length than was perhaps necessary the writings executed by Loveland to Day & McLin, and the pleading of appellant asserting his right to a lien superior to the lien of Day & McLin on the mortgaged property but from these writings and pleadings it will be seen that the Winchester Bank contends that the writing executed by Loveland to Day & McLin on June 2nd was merely a mortgage to secure Day & McLin in the payment of money they had advanced to Loveland, and this being so, their mortgage lien is superior to the subsequent attachment lien of Loveland.

Upon the other hand, it is insisted for appellee, Hurst, that the writing between Loveland and Day & McLin, designated a mortgage, was really a contract of purchase and sale, and that Loveland, in employing the appellee, Hurst, to do the hauling, was acting as the agent of Day & McLin. It is further insisted that if Loveland was not acting as the agent of Day & McLin, the contract between them was made for the benefit of

appellee, and, therefore, he is entitled to recover thereon in his own name.

The writing between Loveland and Day & McLin, although it recites a good many details touching the agreements between them, was, we think, merely a mortgage to secure them in the payment of the money they had advanced to enable him to carry out the option contract under which he became the purchaser of the timber. It appears that Loveland had no means of performing this contract with Hurst. He was not able to pay Hurst the purchase price for the timber or to put the timber on the market, and secured from Day & McLin the money that would enable him to do both of these things. Under the circumstances, the only way in which Day & McLin could be reimbursed for the money they advanced was in manufacturing the timber and having the proceeds applied to the payment of their debt. To accomplish this end, and at the same time protect themselves, it is apparent that it was important under the circumstances that all money received by Loveland from the sale of the timber should be turned over to them, and that they should advance such sums as might be necessary to defray the expense of manufacturing the timber. It was for these reasons, we think, that the parties inserted in the mortgage the conditions relating to the manner in which the proceeds realized from sales should be accounted for and disposed of.

All of the mortgaged property was owned by Loveland, and the manufacture and sale of it was left entirely in his hands. Day & McLin were only concerned in the disposition of the proceeds realized from the sale to the extent that it might be necessary to protect their interest. Having these views of the writing entered into between Loveland and Day & McLin, we do not find anything in its terms or conditions that would authorize us to say that it is not what it purports to be, a mortgage to secure the payment of a debt.

We may also observe that in coming to this conclusion we have kept in mind the well-settled rule that a court, when it comes to construe a writing, is not to be controlled altogether by the name that the parties have given it, but will look to the paper and determine for itself the nature and quality of the writing. If it is in fact a mortgage, although it may be called a deed, or is in truth a contract of sale and purchase, although designated a mortgage, the court, while giving due considera-

tion to the acts of the parties in describing the paper, will not permit injustice or fraud to be practiced by following the title given to the paper by the parties, but will so construe it as to carry out what the facts show was their real intention in its execution.

The contract entered into between Loveland and Hurst relating to the management of the funds, and which was incorporated in the mortgage, was a matter entirely between them. Day & McLin were not parties to the contract between Loveland and Hurst, and it does not appear that they had anything to do with the making of this contract. It is true that the writing between Loveland and Day & McLin provided that the proceeds of timber sold should be applied, among other things, to defray the expense of cutting and hauling the timber, but this clause, as we have indicated, seems to have been inserted for the purpose of showing what disposition should be made of the money as between them, and not with the view of giving laborers any lien superior to the mortgage lien or binding in any manner Day & McLin for the payment of their wages .

The parties to this mortgage contract had the right to agree among themselves as to how the proceeds realized from a sale of the mortgaged property should be applied, and this arrangement was for their benefit alone. The contract was not made for the benefit of Hurst or others who might be employed by Loveland in manufacturing timber. In short, our conclusion that this writing was merely a mortgage disposes adversely of all the contentions made by appellee and establishes that the debt of the mortgagee must be first satisfied before Hurst can subject any of the mortgaged property to the payment of the debt due to him by Loveland.

Wherefore, the judgment is affirmed.